NATHAN WILLIAMS,

                Plaintiff,

v.                                                         Case No. 20-cv-1659-pp

DR. TANNAN, RN HANSEN,
RN PROEHL, L. DOEHLING,
B. HOMPE, C. O'DONNELL,
and D. FOFANA,

                Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 7) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A

Nathan Williams, an inmate at Oshkosh Correctional Institution who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants provided inadequate medication to treat his pain and wrongly dismissed his grievances about his medical treatment. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 7, and screens the complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 7)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When

1

funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On November 2, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $3.97. Dkt. No. 5. The court received that fee on November 12, 2020. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II.     Screening the Complaint

### A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.     The Plaintiff's Allegations

The plaintiff has sued Dr. Tannan, registered Nurses Hansen and Proehl, L. Doehling, B. Hompe, C. O'Donnell and Health Services Assistant Manager D. Fofana. Dkt. No. 1 at ¶¶7–12. He alleges that the defendants work at Oshkosh Correctional Institution, and he has sued the defendants in their individual and official capacities. Id.

The plaintiff alleges that on February 19, 2017, Dr. Tannan prescribed him the medication Ranitidine for stomach pain. Dkt. No. 1 at ¶14. The

3

plaintiff says that the medication not only worsened his stomach pain but also caused pain in his back and side. Id. The plaintiff reported his worsening symptoms to Tannan, who instructed the plaintiff to continue taking the medication. Id. On March 7, 2019, the plaintiff again saw Tannan, who diagnosed the plaintiff with an H. pylori infection.[1] Id., ¶15. The plaintiff told Tannan that he continued to have symptoms, that the medications and antibiotics prescribed had not helped and that he also suffered from constipation and nausea. Id. Tannan ordered a consultation with a gastroenterologist. Id. On August 17, 2019, Tannan instructed the plaintiff to discontinue taking Ranitidine. Id. at ¶16. According to the plaintiff, however, Tannan did not provide him "an adequate pain medication from August 17, 2019 to March 3, 2020," during which time he continued to suffer from pain in his chest, stomach, side and back. Id. at ¶17.

On March 3, 2020, Tannan again prescribed Ranitidine, despite the plaintiff's repeated complaints that the medication did not work or worsened his symptoms. Id. at ¶18. But a month later, the plaintiff received letters from two Health Services Unit (HSU) nurses indicating that the Federal Drug Administration had recalled Ranitidine nationwide, and he should stop taking the medication and return to the HSU. Id. at ¶¶19–20. On April 12, 2020, the plaintiff contacted the HSU asking why the FDA recalled Ranitidine, whether

---

[1] Helicobacter pylori infections result when the H. pylori bacteria infects a person's stomach; they are a common cause of stomach ulcers. https://www.mayoclinic.org/diseases-conditions/h-pylori/symptoms-causes/syc-20356171.

he should be worried about getting sick from having taken it for three years and why Tannan had prescribed Ranitidine multiple times despite the plaintiff's complaints that it was ineffective. Id. at ¶21. He does not say whether he received a response.

The plaintiff says that he wrote a request for health services for his symptoms as early as October 7, 2015, in which he expressed "concern of my abdominal, chest, and pain." Id. at ¶23. He stated, "The pain is still killing me I will like to be checked out as soon as possible. I dont care if I gotta pay." Id. Nurse Hansen responded to his request the next day, telling the plaintiff that he was scheduled to see a doctor and that "if there has been a significant change in pain, please request to see a nurse." Id. at ¶24; Dkt. No. 1-1 at 2. The plaintiff says he "had already stated that 'the pain is killing me I will like to be check out as soon as possible.'" Dkt. No. 1 at ¶25. He asserts that Hansen disregarded his pain by not scheduling him for an immediate appointment in the HSU and leaving him "in pain and [with] no treatment for his pain." Id.

On April 12, 2020, the plaintiff wrote to the HSU requesting "an alternative to the Ranitidine my stomach, my head and back still hurt like crazy could you please give me something." Id. at ¶26. Nurse Proehl responded that the plaintiff was "scheduled with the provider to discuss your Ranitidine replacement and pain." Id. The plaintiff asserts that Proehl did not schedule him "to be seen in HSU to discuss and assess the pain that he felt at that moment, or how to manage the pain until being seen by his provider." Id. Neither the plaintiff nor Proehl's response to his request mention the date of

5

the plaintiff's appointment with Tannan. Elsewhere in the complaint, the plaintiff says he saw Tannan on April 30, 2020. Id. at ¶29.

On April 23, 2020, the prison received a complaint from the plaintiff about his pain and prescription of Ranitidine. Dkt. No. 1-1 at 16. An institutional complaint examiner contacted D. Fofana, assistant manager of the HSU, who reported that the plaintiff had "turned in his Ranitidine" on April 8, 2020. Id. at 21; Dkt. No. 1 at ¶27. The plaintiff asserts that Fofana intentionally left out of the information to the complaint examiner the fact that HSU personnel had told the plaintiff that Ranitidine had been discontinued and that he should stop taking it and return to the HSU. Dkt. No. 1 at ¶27. He says that Fofana had a "duty to intervene and instruct the proper care of plaintiff Williams" during the three years he was taking Ranitidine. Id. at ¶28.

The plaintiff also sues L. Doehling, the reviewing authority who recommended dismissing the plaintiff's complaint about Tannan. Id. at ¶29. Doehling concluded, "Dr. Tannan showed no deliberate indifference as evidenced by treatment received and f/u scheduled." Id.; Dkt. No. 1-1 at 18. The plaintiff asserts that he did not receive a follow-up examination after his April 30, 2020 appointment with Tannen. Dkt. No. 1 at ¶29. He says that Doehling was aware of his "constant pain and complaints of pain" but failed to intervene and assure he received proper medical care. Id.

Defendant B. Hompe is the corrections complaint examiner who reviewed the plaintiff's appeal from the dismissal of his institutional complaint. Id. at ¶30. Hompe concluded that the plaintiff's "complaint [did] not establish any

6

deliberate indifference to a serious medical need but, rather, a mere difference of opinion between the complainant and prison medical staff regarding appropriate treatment." Id.; Dkt. No. 1-1 at 19. The plaintiff contests Hompe's conclusion and asserts that Hompe had a duty "to intervene and instruct prison medical staff to apply treatment that was adequate." Id. at ¶31.

Defendant C. O'Donnell accepted Hompe's conclusion and dismissed the plaintiff's appeal. Id. at ¶32; Dkt. No. 1-1 at 20. The plaintiff asserts that O'Donnell did not review his complaint before dismissing it. Id. He asserts that O'Donnell "utterly disregarded" his complaint and failed to intervene to assure he received proper medical treatment. Id.

The plaintiff seeks declaratory relief and monetary damages against each defendant. Id. at ¶¶33–36.

C. Analysis

1. *Official Capacity*

The plaintiff seeks to sue the defendants in their official capacities. Claims against a government employee in his or her official capacity represent another way to plead an action against the entity that the employee represents or for which the employee works. Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, n. 55 (1978)). Because the plaintiff alleges that the defendants work for Oshkosh Correctional Institution, the court construes his claims against them in their official capacities as if he had brought those claims against the Wisconsin Department of Corrections. Claims against the Wisconsin

Department of Corrections are "no different from a suit against the State itself," so the court construes the plaintiff's claims as if he had brought them against the State of Wisconsin. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Graham, 473 U.S. at 165, and Monell, 436 U.S. at 690, n. 55). But a state is not a "person" subject to suit for damages under §1983. Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002); Williams v. Wisconsin, 336 F.3d 576, 580 (7th Cir. 2003).

The plaintiff also seeks declaratory relief. The plaintiff may sue the defendants under §1983 in their official capacities for *injunctive relief*, see Will, 491 U.S. at 71 n. 10 (quoting Graham, 473 U.S. at 167 n. 14 (1985), and Ex Parte Young, 209 U.S. 123, 159–60 (1908)), but only if the relief he seeks is prospective—that is, if he seeks protection from future harm, Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993). The plaintiff may not use §1983 to obtain a judgment against the defendants in their official capacities if the relief he seeks is a declaration "that they violated federal law in the past." Id. The plaintiff seeks declaratory relief, which relates solely to the defendants' alleged *past* violations of his rights. See Green v. Mansour, 474 U.S. 64, 67–68 (1985). As with his request for damages, the court construes that claim as a claim against the State of Wisconsin. Because the plaintiff may not sue a state under §1983, the court will not allow him proceed on his claims against the defendants in their official capacities.

## 2. *Individual Capacity*

The court reviews the plaintiff's claim regarding the denial of proper medical care under the Eighth Amendment, which "protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 105 (1976). To state a valid Eighth Amendment claim, the inmate must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)); see Estelle, 429 U.S. at 103. "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837).

The plaintiff states that he suffered continued pain for over three years, a symptom of an eventually diagnosed H. pylori infection. An H. Pylori infection may be a serious medical need, particularly where, as the plaintiff alleges, it causes severe pain. See Johnson v. Shah, No. 15-CV-00344-SMY, 2015 WL 2105847, at *3 (S.D. Ill. May 4, 2015) (citing Walker v. Benjamin, 293 F.3d

9

1030, 1040 (7th Cir. 2002)) (explaining that H. pylori infection, when accompanied by "other symptoms of infection" such as severe and persistent pain, may constitute a serious medical need); Turner v. Cox, No. 12-CV-502-BBC, 2013 WL 6183820, at *6 (W.D. Wis. Nov. 26, 2013), aff'd, 569 F. App'x 463 (7th Cir. 2014) (noting party agreement that "h. pylori infection can be a serious medical need under some circumstances").

The plaintiff says that Dr. Tannan was aware of the plaintiff's infection and pain and that Tannan prescribed Ranitidine for three years before discontinuing the prescription and then starting it again. During that time the plaintiff continued to complain that the drug only worsened his pain. During the few months that Tannan did not prescribe Ranitidine, he allegedly provided no medication at all for the plaintiff's pain. The plaintiff does not state, and the court cannot presume, whether there was an alternate medication Tannan could have prescribed in place of the Ranitidine or whether that alternate medication would have treated the plaintiff's infection without worsening his symptoms. The court can conclude, however, that continuing to provide medication that did not address the plaintiff's symptoms—and worsened them—despite the plaintiff's repeated complaints shows deliberate indifference to the plaintiff's medical condition. See Greeno v. Daley, 414 F.3d 645, 655 (7th Cir. 2005) (explaining that a prison official who "doggedly persisted in a course of treatment known to be ineffective" violated inmate's rights). The court will permit the plaintiff to proceed on an Eighth Amendment claim against Tannan.

The plaintiff alleges that in October 2015, he requested immediate treatment for his pain, but that Nurse Hansen responded only with a reminder of his upcoming appointment. Hansen instructed the plaintiff that "if there has been a significant change in pain, please request to see a nurse." Dkt. No. 1, ¶24. The plaintiff insists that his first request should have alerted Hansen to his need for immediate treatment. The plaintiff does not state how much time passed between his request for immediate treatment and his appointment with the doctor. But in certain circumstances, "even brief, unexplained delays in treatment may constitute deliberate indifference." Lewis v. McLean, 864 F.3d 556, 563 (7th Cir. 2017) (quotation omitted). The plaintiff's request for treatment stated that "[t]he pain is killing me" and asked for treatment "as soon as possible," even if that meant the plaintiff had to pay for the immediate treatment. Although he already was scheduled for a doctor's examination, the plaintiff's urgent request could have been enough to warrant Hansen providing immediate treatment. The court will allow the plaintiff to proceed against Hansen on this claim under the Eighth Amendment.

The analysis is different for the plaintiff's similar claim against Nurse Proehl. The plaintiff's April 12, 2020 request asked for an alternative medication to Ranitidine because his stomach, head and back "still hurt like crazy could you please give me something." Dkt. No. 1-1 at 12. Proehl scheduled the plaintiff for an appointment with an advanced care provider to determine an appropriate replacement for Ranitidine and to discuss the plaintiff's pain. Id. Proehl did not disregard the plaintiff's pain but instead

11

scheduled him for an appointment with a medical provider to address the plaintiff's questions and concerns. Having to wait before seeing a doctor for a non-emergency situation is not deliberate indifference; it is a fact of life, inside and outside of prison. The plaintiff has not stated sufficient facts to support an Eighth Amendment claim against Proehl.

The plaintiff asserts that D. Fofana, as assistant manager of the HSU, had a duty to intervene and ensure the plaintiff received proper medical care. The plaintiff does not allege that Fofana is a medical professional or that Fofana provided him medical treatment. He seeks to hold her responsible as the assistant manager of the HSU. But Fofana may not be held liable for the conduct of everyone who worked at the HSU merely because she is a manager; she is liable only for her "own individual actions." Iqbal, 556 U.S. at 676. Fofana may be held liable in her supervisory role only if she knew about the allegedly unconstitutional conduct of her subordinates and facilitated, approved or condoned it or "turn[ed] a blind eye for fear of what [she] might see." Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001).

The plaintiff does not allege that Fofana knew about the plaintiff's complaints of pain before he filed his grievance. Nor does he allege that she should have known but "turned a blind eye" to avoid learning about his treatment. He states that when she learned during the institutional complaint examiner's investigation into his complaint that he had complained of pain for three years, "it was her duty to intervene and instruct the proper care of plaintiff Williams." Dkt. No. 1, ¶28. But by that point (late April 2020),

12

Ranitidine had been recalled, the plaintiff had stopped taking it and he had a pending appointment to determine a replacement medication. The plaintiff's complaint does not allege sufficient facts that allow the court reasonably to infer that Fofana knew about the plaintiff's pain at the time it was happening or that she approved his allegedly deficient treatment. She cannot be held liable for conduct of which she was unaware.

The plaintiff also alleges that Fofana not only failed to assure his care but also misrepresented his care to the institutional complaint examiner who contacted Fofana while reviewing the plaintiff's complaint. He says that Fofana intentionally omitted the information that HSU personnel had instructed the plaintiff to stop taking Ranitidine after the FDA recall and instead merely told the complaint examiner that he "turned in his Ranitidine." Dkt. No. 1 at ¶27. The plaintiff does not explain how he knows that Fofana *intentionally* omitted information about the recall when communicating with the complaint examiner. But the complaint examiner's conclusion did not rest on the plaintiff's return of his medication. The complaint examiner concluded that the plaintiff's concerns amounted to a mere disagreement with Tannan's treatment decision. Dkt. No. 1-1 at 21–22. The recall of Ranitidine was not relevant to that conclusion. Fofana's alleged withholding of information is immaterial and does not show that she was deliberately indifferent to the plaintiff's medical need. Because the plaintiff has not alleged facts showing that he is entitled to relief against Fofana, the court will not permit the plaintiff to proceed on an Eighth Amendment claim against her.

13

The plaintiff has not stated a claim against L. Doehling or B. Hompe. He alleges that Doehling and Hompe reviewed his inmate complaint, in which he discussed his pain and medical treatment. But he does not allege that these defendants are medical professionals who had any role in his medical treatment. Nor does he allege that they were aware of his medical concerns before they reviewed his complaint in May 2020. Because these defendants are not medical professionals, they had no duty to intervene with a prescribed course of medical treatment and were "justified in believing that the prisoner [was] in capable hands." Arnett, 658 F.3d at 755 (citing Greeno, 414 F.3d at 656). Their job was to process the plaintiff's institutional complaint, which they did. Doehling and Hompe, as institutional complaint examiners, cannot be held liable for the plaintiff's medical treatment.

The plaintiff also contests the outcome of his institutional complaint and appeal. But he does not allege that Doehling or Hompe improperly reviewed his complaint or failed to perform their jobs as complaint examiners. In fact, he acknowledges that both Doehling and Hompe reviewed his complaint and his medical records. He disagrees with their conclusions, but his dissatisfaction with the outcome of his grievance does not state a constitution violation. See Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009) (rejecting prisoner's claim against institutional complaint examiner who "carried out her job exactly as she was supposed to").

The plaintiff also alleges that C. O'Donnell wrongly affirmed the dismissal of his appeal. The plaintiff has not stated a claim against O'Donnell for

14

dismissing his appeal. But he also alleges that O'Donnell, unlike Doehling and Hompe, disregarded his complaint and dismissed it without reviewing his allegations. Such a blind dismissal, if true, could state a claim against O'Donnell. See Burks, 555 F.3d at 595 (explaining possible claim against institutional complaint examiner for "refusing to do her job and . . . leaving the prisoners to face risks that could be averted by faithful implementation of the grievance machinery"). Like his allegations against Fofana, the plaintiff does not explain how he knows whether O'Donnell reviewed his complaint and dismissed it sight unseen. But the court must accept his factual allegations as true at the screening stage. The court will allow the plaintiff to proceed against O'Donnell for dismissing his grievance without reviewing his allegations.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 7.

The court **DISMISSES** defendants Proehl, Doehling, Hompe and Fofana.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on Dr. Tannan, RN Hansen and C. O'Donnell. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within sixty days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$346.03** balance of the filing fee

by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

---

[2] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

THE PLAINTIFF MUST NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 23rd day of May, 2022.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**